RECEIVED
JAN 1 8 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

ROGER L. POOLE

versus

CIVIL NO. 07-2180
JUDGE TOM STAGG

CITY OF SHREVEPORT, ET AL.

## MEMORANDUM RULING

Before the court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by the defendants, the City of Shreveport ("the City"), former interim chief of police Mike VanSant ("VanSant"), Sergeant John D. Stalnaker ("Stalnaker"), and Corporal J. Creighton ("Creighton"). See Record Document 31. Based on the following, the defendants' motion is **GRANTED**.

### I. BACKGROUND

**A. Background.**

Roger L. Poole ("Poole") filed suit against the Shreveport Police Department, the City, VanSant, Stalnaker and Creighton alleging that the latter two defendants applied excessive force to Poole in violation of his constitutional rights during a routine traffic stop. His complaint charges excessive use of force by Creighton and Stalnaker in violation of his Fourth and Fourteenth Amendment rights, failure by

1

the City and VanSant to train and supervise officers on the use of force or to establish and enforce policies related to the use of force, traffic stops or the conduct of off-duty officers, and related state law claims.[1] See Record Documents 1, 15 and 36. The defendants filed this motion for summary judgment, seeking dismissal of all claims against them. See Record Document 31. In his response, Poole contests summary judgment on only two claims: the excessive use of force by Creighton and Stalnaker and the failure to establish and enforce polices governing off-duty officers by the City and VanSant. See Record Document 36 at 2-3. Poole does not contest the defendants' motion for summary judgment as to his other federal law claims. See id. at 3 n.1. Accordingly, the court will address only the two disputed claims.

**B.    Relevant Allegations.**

On the morning of December 19, 2006, Stalnaker stopped a truck driven by Poole on Interstate 20 near Greenwood Road in Shreveport, Louisiana. See Record Document 1 at 3. Poole's truck was stopped on Creighton's request after Poole and Creighton were involved in a "road rage" incident in which Poole had thrown water onto Creighton's personal vehicle. See id. Once stopped, Stalnaker detected alcohol on Poole's breath and emanating from his truck. See Record Document 31,

---

[1] The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was granted in part and denied in part. See Record Document 17. The motion was granted to the extent that Poole's Fifth Amendment claims were dismissed. See id. The motion was denied in all other respects. See id.

Subject Management Report by Stalnaker, Statement of Undisputed Facts at 2.[2] Poole admitted having "already consumed one-half of a sixteen ounce beer that morning prior to the traffic stop." Record Document 31, Statement of Undisputed Facts at 2. Creighton, who was off-duty, appeared on the scene and patted Poole down for weapons. See Record Document 31, Police Unit Video ("Video"),[3] Deposition of Creighton at 31-32. No weapons were found. See id.

According to Poole, and taking the facts in the light most favorable to him, Creighton began to verbally threaten and challenge him.[4] See Record Document 1 at 4; Record Document 36, Ex. B at 79. Poole alleges that these threats continued until he raised his hands in a surrender gesture and sarcastically offered to let Creighton hit him, at which time the officers decided that they should handcuff Poole.[5] See Record Document 1 at 4; Record Document 36, Ex. B at 83. Poole claims that Stalnaker and Creighton never informed him that he was under arrest or

---

[2] The court cites the defendants' Statement of Undisputed Facts where Poole does not contest the facts. See Record Document 36, Statement of Disputed Facts at 1.

[3] Stalnaker's police unit camera was operating during this incident and recorded both audio and visual footage. The parties do not dispute the video. See Record Document 31, Statement of Undisputed Facts at 3. The court has viewed the video in its entirety.

[4] The video does not capture the exchange between Creighton and Poole prior to Poole's arrest, because the men were outside the view of the camera.

[5] The officers maintain that Poole raised his hands in a "fistic manner" at Creighton and asked Creighton if he wanted to hit him. See Record Document 31, Deposition of Stalnaker at 38, Deposition of Creighton at 49-52.

told him to put his hands behind his back. See Record Document 36, Ex. B at 83. However, in the undisputed video taken from Stalnaker's police unit, the officers can be heard repeatedly instructing Poole to put his arms behind his back. See Record Document 31, Video. The video shows Poole resisting the officers' efforts and an ensuing struggle between Poole and the two officers. See id.

According to Poole, one of the officers grabbed his left arm, and "pulled it in a manner that caused Poole to experience excruciating pain." Record Document 1 at 4. Poole claims he warned the officers that his arm was about to break, yet one of the officers continued to apply force to his arm while the other officer tasered him multiple times. See id. at 5. Poole alleges that he was shoved onto the fifth wheel of his truck, again tasered, and yanked off the truck.[6] See id. However, Poole testifies in his deposition that he has no recollection of being on the fifth wheel or how he got there. See Record Document 36, Ex. B at 91-92. The parties do not dispute that Stalnaker removed the taser prongs, which minimized the shock, and that both Stalnaker and Creighton were shocked as well. See Record Document 31, Deposition of Stalnaker at 48-51.

After subduing Poole, the officers recognized he was injured and called for medical assistance. See Record Document 31, Statement of Undisputed Facts at 4. As a result of this incident, Poole suffered "a severe and disabling dislocation of his left elbow" and "had to undergo approximately six painful and invasive surgical

---

[6] Stalnaker maintains that Poole jumped or climbed onto the fifth wheel of his truck. See Record Document 31, Deposition of Stalnaker at 50-51.

4

procedures." Record Document 1 at 7.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Quality Infusion Care, Inc. v. Health Care Serv. Corp., – F.3d –, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co.,402 F.3d 536, 540 (5th Cir. 2005).

---

[7] The court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the court's analysis. Fed.R.Civ.P. 56(a) and advisory committee's note (emphasis added).

5

**B.    Poole's Federal Law Claims.**

Title 42, United States Code, section 1983 provides the remedy for constitutional violations of the sort alleged by Poole. Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The court will analyze Poole's claims separately, beginning with excessive use of force.

**1.    Excessive Use Of Force.**

Poole alleges excessive use of force by officers Stalnaker and Creighton in violation of his Fourth and Fourteenth Amendment rights. Stalnaker and Creighton claim qualified immunity. See Record Document 31.

Qualified immunity shields government officials from liability in their performance of discretionary functions, unless their conduct violated a clearly established constitutional right. See Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009). "Once raised, a plaintiff has the burden to rebut the qualified immunity defense . . . . We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005). The qualified immunity inquiry consists of two prongs: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional

6

right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Ontiveros, 564 F.3d at 382. After Pearson v. Callahan, – U.S. –, 129 S.Ct. 808 (2009)(overruling, in part, Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)), the court may conduct the two-part test in any sequence. See id.

The Fourth Amendment right to be free from excessive force was clearly established at the time of Poole's traffic stop. See Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009). Thus, the question for the court is whether, considering the facts in the light most favorable to Poole, he has demonstrated facts sufficient to establish a violation of this Fourth Amendment right.

To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros, 564 F.3d at 382. The "reasonableness" of the officers' use of force is an objective determination that "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989)). The question is whether the officers' conduct is "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. In determining whether the force was reasonable, the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." Deville, 567 F.3d at 167 (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872).

Poole satisfies the first prong, as it is undisputed that he suffered a dislocated elbow as a result of the incident. However, Poole fails to show that his injury resulted from excessive force that was clearly unreasonable. The officers were presented with a suspect who had been driving recklessly, smelled of alcohol, admitted to throwing liquid out of his vehicle with the intention of striking another vehicle, and confessed to drinking a beer prior to driving. See Record Document 36, Ex. B at 78; Record Document 31, Statement of Undisputed Facts at 1-2. In addition, Poole raised his hands at an officer and actively resisted arrest. See Record Document 36, Ex. B at 83; Record Document 31, Video. The officers' use of force was tailored to Poole's resistance, beginning first with verbal commands, then physical force, and finally use of a taser. Stalnaker's removal of the prongs from the taser indicates an effort by him to minimize injury. After subduing Poole, the officers recognized he was injured and called for medical assistance. Even assuming the officers shoved Poole onto the fifth wheel of his truck, as Poole claims, such action is not "clearly excessive" or "clearly unreasonable" given the circumstances. The officers' use of force was "objectively reasonable" "in light of the facts and circumstances confronting them." Ontiveros, 564 F.3d at 382.

While there is a genuine dispute as to the events that triggered Poole's arrest and the officers' use of force, the dispute is immaterial to Poole's excessive force claim. The parties dispute whether Creighton, motivated by personal reasons related

to the prior "road rage," was verbally aggressive towards Poole. The parties also dispute whether Poole raised his hands at Creighton in a "fistic manner" or in surrender. Taking Poole's allegations as true, they are insufficient to establish a claim of excessive force. Creighton's motivations or intentions are irrelevant, as the reasonableness of his conduct must be viewed objectively. See Graham, 490 U.S. at 397, 109 S.Ct. at 1872 (explaining that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional"); Ontiveros, 564 F.3d at 382. It is also immaterial whether Poole's raised hands were open or in fists. Poole admits that he raised his hands at an officer and offered to let the officer hit him. See Record Document 36, Ex. B at 83. The officers' perception that Poole was physically threatening Creighton was reasonable under these circumstances. Moreover, Poole does not challenge the legality of his traffic stop or arrest, and the officers did not use force until after Poole resisted arrest. See Record Document 31, Video.

The court finds that there is no genuine dispute of material fact regarding the reasonableness of the officers' use of force. Thus, Poole fails to demonstrate a violation of his Fourth Amendment rights, and Creighton and Stalnaker are entitled to qualified immunity. The defendants' motion for summary judgment is **GRANTED** with respect to Poole's claim of excessive use of force against Creighton and Stalnaker.

### 2. Failure To Establish Or Enforce Policies Governing Off-Duty Officers.

Poole alleges a failure by interim chief of police VanSant and the City to establish or enforce policies regulating the investigation, questioning, and detention of suspects by off-duty police officers. Poole does not indicate whether he is suing VanSant in his official or individual capacity. The court will address VanSant's potential liability in both capacities.

#### a. The City And VanSant In His Official Capacity.

An action against a governmental officer in his "official capacity" is equivalent to a suit against the governmental entity and "victory in such an official-capacity suit imposes liability on the entity that the officer represents." Burge v. Parish of Saint Tammany, 187 F.3d 452, 468 (5th Cir. 1999) (quoting McMillian v. Monroe County, Ala., 520 U.S. 781, 785 n.2, 117 S.Ct. 1734 (1997)). The court will consider Poole's claims against VanSant in his official capacity and the City as a single claim. See Goodman v. Harris County, 571 F.3d 388, 396 (5th Cir. 2009) (holding that the plaintiff's official capacity suit against the governmental officer was "subsumed" within his claim against the governmental entity).

A municipality is not liable under section 1983 on the theory of respondeat superior but instead only for acts that are directly attributable to it "through some

10

official action or imprimatur." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). In addition to identifying a constitutional violation, a plaintiff must show that an official policy promulgated by the municipality was the "moving force" behind the injury alleged. See id.

A plaintiff may establish a section 1983 claim for "failure to train" or "failure to establish a policy" in limited circumstances where (1) there was a failure to properly train employees or to establish a policy, (2) the inadequacy of the training or the absence of the policy evidences a deliberate indifference to the rights of citizens, and (3) the identified deficiency in training or policy caused the constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1204-05 (1989); Burge, 187 F.3d at 466, 472.

A plaintiff must demonstrate that the policymaker acted with deliberate indifference, for "only where a failure to train [or failure to establish policy] reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' . . . - can a city be liable for such a failure under [section] 1983." City of Canton, Ohio, 489 U.S. at 389, 109 S.Ct. at 1205. "Deliberate indifference is a stringent standard of fault," requiring a showing of "more than negligence or even gross negligence." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). "Actions and

11

decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." Id. Rather, a plaintiff must demonstrate, usually through a pattern of violations, that "the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the need." Burge, 187 F.3d at 471 (internal quotations omitted).

Poole fails to demonstrate that the City or VanSant acted with deliberate indifference towards the rights of citizens. It is undisputed that the Shreveport Police Department ("SPD") has policies, similar to the International Association of Chiefs of Police ("IACP") model policies, regulating the use of force and traffic stops.[8] See Record Document 31, Narrative by George J. Armbruster, Jr. at 2. It is also undisputed that SPD's training program exceeds the minimum requirements of the State of Louisiana. See id. Poole provides no evidence of a pattern, or even another single incident, of alleged excessive force by off-duty officers. He also does not offer any evidence to rebut the defendants' expert opinion that "[t]he

---

[8] Poole does not refute the defendants' evidence of SPD's use of force policies and training programs. He also does not challenge the defendants' motion for summary judgment on his claims of failure to establish and enforce use of force policies and failure to properly train. See Record Document 36 at 3 n.1.

administration of the Shreveport Police Department . . . appears to be reasonable and falls well within the generally recognized guidelines of the law enforcement community." Id. While it may be wise for SPD to establish a policy specifically governing off-duty police officers in their interaction with suspects, Poole has not shown that the current policies are insufficient or that the lack of a more specific policy was "so likely to result in the violation of constitutional rights" as to amount to deliberate indifference.

The court finds that there is no genuine dispute of material fact with regard to whether the City and VanSant were deliberately indifferent to the rights of citizens. As Poole fails to establish deliberate indifference, the court does not reach the question of causation.[9] With respect to Poole's claims against the City and VanSant in his official capacity, the defendants' motion for summary judgment is **GRANTED**.

    **b.**     **VanSant In His Individual Capacity.**

To the extent Poole brings suit against VanSant in his individual capacity, the

---

[9] Even if the court found that Poole demonstrated deliberate indifference, which it does not, Poole fails to show that the absence of a policy was the "moving force" behind his constitutional violation.

13

court must examine whether VanSant is entitled to qualified immunity.[10] Qualified immunity is available to VanSant, "unless the defendant's conduct violated a clearly established constitutional right." Ontiveros, 564 F.3d at 382. As discussed previously, the qualified immunity inquiry consists of two prongs: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Id. Again, the plaintiff bears the burden of rebutting the qualified immunity defense. See Estate of Davis, 406 F.3d at 380.

"Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or respondeat superior liability. Plaintiffs must show that the conduct of the supervisors denied [the plaintiff] his constitutional rights." Id. at 381. Poole does not allege and the record does not show that VanSant was present during the incident that gave rise to this action. Poole alleges instead that VanSant failed to establish or enforce policies governing off-duty officers in their interactions with suspects and this deficiency caused his constitutional injury.

---

[10] Qualified immunity is available to an officer when he is sued in his individual capacity but not in his official capacity. See Burge, 187 F.3d at 466-67.

As previously mentioned, to establish a section 1983 claim against an officer for "failure to train or supervise" or "failure to establish a policy," the plaintiff must demonstrate (1) the supervisor failed to properly train employees or to establish a policy, (2) the inadequacy of the training or the absence of the policy evidences a deliberate indifference to the rights of citizens, and (3) the identified deficiency in training or policy caused the constitutional violation. See City of Canton, Ohio, 489 U.S. at 388-89, 109 S.Ct. at 1204-05; Burge, 187 F.3d at 466, 472; Estate of Davis, 406 F.3d at 381.

As with his claim against the City, Poole fails to demonstrate that VanSant acted with deliberate indifference. Poole provides no evidence of a pattern of abuse by off-duty officers or any other evidence demonstrating there was an obvious need for such a policy. He also offers no evidence to counter the defendants' expert opinion that "[t]he department had in place a reasonable line of supervision" and its administration "falls well within the generally recognized guidelines of the law enforcement community." Record Document 31, Narrative of George J. Armbruster, Jr. at 2.

As there is no genuine dispute of material fact with respect to whether VanSant was deliberately indifferent to the rights of citizens, the court does not need to address

the remaining prongs.[11] With regard to Poole's claim against VanSant in his individual capacity, VanSant is entitled to qualified immunity and the defendants' motion for summary judgment is **GRANTED**.

C.  **State Law Claims.**

Poole alleges various state law claims in addition to his federal law claims. All of Poole's federal law claims have been dismissed. At the request of the parties, the court declines to exercise its supplemental jurisdiction over the remaining state law claims and will accordingly dismiss them without prejudice. See 28 U.S.C. § 1367(c)(3); Certain Underwriters at Lloyd's, London v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006) (explaining "it is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case").

### III. CONCLUSION

Based on the foregoing, the defendants' motion for summary judgment (Record Document 31) is **GRANTED**, insofar as Poole's federal law claims are dismissed with prejudice.[12] The court will exercise its discretion under 28 U.S.C. §

---

[11] Even if the court found that Poole demonstrated deliberate indifference, which it does not, Poole fails to show that the absence of a policy caused his constitutional violation.

[12] As mentioned previously, Poole "does not contest the other grounds . . . on which the defendants seek summary judgment." Record Document 36 at 3 n.1. Accordingly, the defendants' motion for summary judgment is **GRANTED** with respect to Poole's other federal law claims, in addition to the claims analyzed

1367(c), in accordance with the general rule of this circuit, and decline to exercise supplemental jurisdiction over Poole's state law claims. Poole's state law claims are dismissed without prejudice. A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 13th day of January 2011.

JUDGE TOM STAGG

here by the court.